**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

SAMUEL GARCIA, D/B/A CAVALRY MEMORIAL,

Plaintiff,

v.

TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA,

Defendant.

No. 2:17-cv-00423-JCH-KRS

---

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Defendant, Travelers Casualty Insurance Company of America ("Travelers"), through its attorneys, respectfully submits this Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.

## I. INTRODUCTION

Plaintiff, Samuel Garcia, doing business as Calvary Memorial is the owner of property located at 418 W. Bender Blvd., Hobbs, New Mexico (hereinafter the "Property"). Plaintiff operates a funeral home on the Property and claims that it sustained severe damage as the result of a hail and wind storm occurring on June 7, 2014. Plaintiff submitted a claim to his insurer, Travelers for the alleged storm damage. Travelers inspected the loss and found minimal hail damage to the Property. Specifically, Travelers found hail damage to the soft metal components on the building's roof, but did not find damage to the built-up roof itself. Travelers also concluded that the interior water damage was not caused by a covered cause of loss. Travelers paid the covered damages owed under the Policy. Plaintiff disputed this amount and more than two years

after the date of loss, filed the instant action asserting claims for breach of contract, unfair insurance claim practices, negligence and bad faith.

All of Plaintiff's claims fail as a matter of law. First, the breach of contract claim is barred by the Policy's contractual two-year suit limitation period. Specifically, Plaintiff did not file the instant action until April 6, 2017, which is more than two years after the June 7, 2014 date of loss. Second, in order to establish a violation of the Unfair Claims Practices Act, Plaintiff must establish that Travelers committed one of the prohibited practices either knowingly or with such frequency as to indicate a general business practice, which Plaintiff cannot do. Third, New Mexico does not recognize a claim for negligent claim handling/ failure to pay and as such, Plaintiff's negligence claim also fails. Finally, Plaintiff cannot establish a bad faith claim as he cannot show that Travelers denied his claim for unfounded or frivolous reasons, as New Mexico law requires him to do. For these reasons, as more fully explained below, this Court should grant Travelers' Motion for Summary Judgment and dismiss all of Plaintiff's claims in their entirety.

In accordance with D.N.M.LR-Civ. 7.1, counsel for Defendant has determined that this motion is opposed.

## II. STATEMENT OF MATERIAL UNDISPUTED FACTS

Defendant submits that the following facts are material and undisputed, in accordance with D.N.M.LR-Civ. 56-1 and Rule 56, Fed.R.Civ.P.:

1. Plaintiff is the owner of property located at 418 W. Bender Blvd., Hobbs, New Mexico (hereinafter the "Property"). Dkt. 1-2 at ¶ 8. Plaintiff operates a funeral home on the Property. *Id.*

2. Plaintiff's Property suffered damage from a hail and wind storm on June 7, 2014. Dkt. 1-2 at ¶ 11.

3. At the time of the subject storm, Plaintiff was insured under a Travelers' policy of insurance, No. 680-6D425216-13-42 ("the Policy"). The Policy was in effect from October 25, 2013 to October 25, 2014. *See* Declaration of Mr. Kelley Chudy, attached hereto as **Exhibit 1** at ¶ 5; *see also* relevant portions of Policy attached hereto as **Exhibit 2** at TRAVELERS000627.

4. The Policy provides that "No one may bring a legal action against us under this Coverage Form unless: . . . 2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred." *See* **Exhibit 2** at TRAVELERS000670.

5. Plaintiff submitted a claim with Travelers approximately nine months after the date of loss. *See* **Exhibit 1** at ¶ 6.

6. Travelers hired Mr. Larry Childers of Aspen Property Claims to perform an inspection of the Property's roofs. *See* **Exhibit 1** at ¶ 7. Mr. Childers contacted the insured's representative and performed his inspection on or about April 7, 2015. *See* **Exhibit 1** at ¶ 7.

7. Aspen provided Travelers with a report on or about April 8, 2015. **Exhibit 1** at ¶ 8. A copy of the Aspen Report (without photographs), dated April 8, 2014 is attached hereto as **Exhibit 3.** Aspen reported that it found damage to the soft metal building components. *Id*. at TRAVELERS000470-71. Aspen did not, however, find damage to the built up roofing system. *Id.* Aspen also inspected the interior of the building for water damage and determined any observed water damage was the result of wear and tear of the roof surface, and not storm damage. *Id.* at TRAVELERS000471.

8. Aspen also reported that a representative of Plaintiff's roofing contractor, Allstate Roofing, was present during Aspen's inspection and agreed with Aspen's assessment. *Id*. at TRAVELERS000470-471 (noting in multiple places that contractor is in agreement with findings).

9. Upon receipt of Aspen's report, Travelers questioned whether the damage to the metal parapet caps was caused by hail. To investigate further, Travelers retained an engineer with Nelson Forensics to perform a second site inspection. *See* **Exhibit 1** at ¶ 9. Nelson Forensics re-inspected the property on June 2, 2015, and provided Travelers with a written report confirming hail damage to the soft metal components, including the parapet caps. *See* Nelson Report dated June 23, 2015 attached hereto as **Exhibit 4** at TRAVELERS000158**.** Nelson Forensics agreed with Aspen that the built up roof was not damaged by hail. **Exhibit 4** at TRAVELERS000157. Nelson Forensics also agreed with Aspen that the interior water damage was the result of wear and tear to the roof rather than storm damage. *Id.* at TRAVELERS000163.

10. Upon receipt of Nelson Forensics' report, Travelers completed an estimate to repair the hail damage. **Exhibit 1** at ¶ 10. The estimate was for a replacement cost value of $10,172.20; actual cash value of $4,328.18; and recoverable depreciation of $5,844.02. *See* Travelers' estimate dated July 8, 2015 attached hereto as **Exhibit 5.** Notably Travelers' estimate was not for a full replacement of the Property's roofs.

11. On or about July 9, 2015, Travelers provided a copy of its estimate to Plaintiff and a letter explaining the portion of Plaintiff's claim that was not covered. **Exhibit 1** at ¶ 11. A copy of Travelers' letter dated July 9, 2015 is attached hereto as **Exhibit 6,** TRAVELERS 000518-520. Travelers issued payment in the amount of $2,384.67 after reducing the amount owed by Plaintiff's deductible and a co-insurance penalty. **Exhibit 1** at ¶ 11

12. Nine months later, on April 25, 2016, Plaintiff obtained an estimate to replace the Property's roofs in the amount of $141,190.95. **Exhibit 1** at ¶ 12. This estimate included the full removal and replacement of Plaintiff's roofing system, including replacement of the five commercial property air conditioning units. Dkt. 1-2 at ¶ 13.

13. Travelers considered the insured's estimate but declined to pay anything further on the claim. **Exhibit 1** at ¶ 13.

14. Plaintiff filed his Complaint on April 6, 2017. Dkt. 1-2.

## III. ARGUMENT AND AUTHORITIES

Fed. R. Civ. P. 56(a) provides that "a party may move for summary judgment, identifying each claim or defense - - or the part of each claim or defense - - on which summary judgment is sought." The moving party bears the "initial burden to show that there is an absence of evidence to support the nonmoving party's case." *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (internal quotation omitted). "While the movant bears the burden of showing an absence of a genuine issue of material fact, the movant need not negate the non-movant's claim, but need only point to the absence of evidence to support the non-movant's claim." *Wolf v. Prudential Ins. Co.*, 50 F.3d 793, 796 (10th Cir. 1995).

If the moving party meets this initial burden, then the non-moving party must identify specific facts that show the existence of a genuine issue of material fact. *Munoz*, 221 F.3d at 1164. This burden is not satisfied with "some metaphysical doubt as to the material facts," *Matsushita Electric Industrial Co. v. Zenith Radio Corp*, 475 U.S. 574, 5867 (1986), "conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990), "unsubstantiated assertions,"

*Wilson v. Meeks*, 52 F.3d 1547, 1553 (10th Cir. 1995), or the "mere existence of a scintilla of evidence, in support of the [non-moving party's] position," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). To meet its Rule 56 burden, the non-movant must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex Corp v. Catrett*, 477 U.S. 317, 324 (1986). If the non-movant fails to show that there is a genuine issue as to any material fact, the movant is entitled to summary judgment as a matter of law. *Id.* at 322. Lastly, "the mere existence of some alleged fact dispute between the parties will not defeat an otherwise properly supported motion for summary judgement." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986).

Where, as here, jurisdiction is based on diversity of citizenship, the Court shall look to the forum state, New Mexico, to determine the substantive law. *Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995).

**A. Plaintiff's Breach of Contract Claim is Barred by the Policy's Enforceable Two-Year Contractual Limitation Provision.**

"Insurance contracts are construed by the same principles which govern the interpretation of all contracts." *Dove v. State Farm Fire and Cas. Co.*, 2017-NMCA-051,¶ 17, 399 P.3d 400, 407. An insurance policy's terms must be interpreted in their "usual, ordinary, and popular sense." *Battishill v. Farmers Alliance Ins. Co.*, 2006-NMSC-004, ¶ 8, 139 N.M. 24, 25, 127 P.3d 1111, 1113. A party who executes and enters into a written contract with another is presumed to know the terms of the agreement, and to have agreed to each of its provisions." *State ex rel. Udall v. Colonial Penn Ins. Co.*, 1991- NMSC-048, ¶10, 112 N.M. 123, 126, 812 P.2d 777, 780.

Accordingly, parties are free to contract as they see fit, and having clearly expressed a time-to-sue provision, will be bound by it. *Id.*

In general, the Supreme Court of New Mexico has upheld insurance contract time-to-sue provisions. *Sanchez v. Kemper Ins. Companies*, 1981-NMSC-032, 96 N.M. 466, 632 P.2d 343; *see also generally Raja v. Ohio Security Ins. Co.*, Civ 17-0834 JB/CG, 2018 WL 1626258, at *22 (D. N.M. March 31, 2018)(refusing to dismiss action based on Plaintiff's failure to satisfy conditions precedent as suit limitation provision could bar re-filing). If an insurer establishes a violation of a time-to-sue provision, the insurer need not show prejudice to enforce it. 1981-NMSC-032, ¶12, 96 N.M. 466, 468, 632 P.2d 343, 345. The purpose of a time-to-sue provision in an insurance policy is not to avoid prejudice, but to allow "an insurer to avoid uncertainty as to the amount of its liability . . . [and allow] stale claims to be cut off." 1981-NMSC-032, ¶7, 96 N.M. 466, 467, 632 P.2d 343, 344.

In this case, the applicable insurance policy has a two-year time-to-sue provision that accrues from the date of loss. Statement of Material Undisputed Facts ¶ 4. Plaintiff claims his property was damaged as the result of a hail and wind storm on June 7, 2014. Complaint ¶ 11 (Dkt. No. 1-2, filed April 6, 2017). Thus, pursuant to the Policy's suit limitation provision, Plaintiff should have filed his Complaint on or before June 7, 2016. However, Plaintiff did not file his Original Complaint until April 6, 2017, more than two years after the date of loss. *See* Complaint (Dkt. 1-2). As a result, Plaintiff's breach of contract claim fails as a matter of law and must be dismissed.

### B. Plaintiff Cannot Meet his Burden to Establish a Claim under the Unfair Claim Practices Act and His Claim Must Fail as a Matter of Law.

The Unfair Claim Practices Act ("UCPA") prohibits certain practices by insurance companies. *See generally* NMSA § 1978, 59A-16-20; UJI 13-1706 NMRA. The UCPA identifies fifteen different practices that when committed knowingly or performed with such frequency as to indicate a general business practice, are defined as unfair and deceptive practices. § 59A-16-20. Even if Plaintiff could establish that Travelers engaged in any of these practices, which Travelers expressly denies, Plaintiff must also establish that Travelers committed them knowingly or performed them with such frequency as to indicate a general business practice. Finally, Plaintiff must also establish that Travelers' alleged actions proximately caused Plaintiff's damages. UJI 13-1706. Plaintiff cannot meet these burdens and his UPCA claim fails as a matter of law.

In his Complaint, Plaintiff alleges generally that Travelers violated fourteen of the practices prohibited by the UCPA. Dkt. 1-2 at ¶¶ 27(A)-(N). However, Plaintiff only pled facts to support three of the prohibited practices. Specifically, Plaintiff's Complaint alleges the following: (1) Travelers failed to adopt and implement reasonable standards for a prompt investigation as its engineer did not bring his own tools or a ladder to inspect the roof, knowing that such equipment was necessary to investigate the roof properly in violation of § 59A-16-20(C), Dkt. 1-2 ¶ 11; (2) Travelers failed to provide Plaintiff with an explanation of the basis for its refusal to offer a full and faith settlement in violation of § 59A-16-20(N), *Id.*; and (3) Travelers' engineer's method of inspection caused him to not fully quantify Plaintiff's losses in violation of § 59(A)-16-20(E) which prohibits an insurer from not attempting in good faith to effectuate prompt, fair and equitable settlement of an insured's claim in which liability has become reasonably clear. Dkt 1-2 at ¶ 12.

As an initial matter, Travelers' alleged violations of the UCPA are unsupported by the facts. Travelers' actions demonstrate that it performed a fair and prompt investigation of Plaintiff's

claim. After receiving notice of the loss, Travelers promptly hired Aspen Claims Services to inspect the loss. Statement of Material Undisputed Facts ¶ 6. When it had questions related to the initial findings, Travelers hired an engineer to investigate further. Statement of Material Undisputed Facts ¶ 9.[1] Upon obtaining confirmation of the limited hail damages present on Plaintiff's Property, Travelers promptly issued payment for the amount of covered damages supported by its investigation. Statement of Material Undisputed Facts ¶ 10. And finally, along with its payment, Travelers provided a written explanation of the bases for its position. Statement of Material Undisputed Facts ¶ 11. Mr. Garcia admitted as such in his deposition:

> Q. Travelers provided you, at least on July 9th of 2015, with an explanation of the basis for its refusal to offer a full settlement, correct?
>
> A. I don't -- I don't believe that there was any discussions about full settlements or anything. I think this was one of the things that -- if I recall right, my agent and I were discussing this, as well, "Sam, you know, we could give you so much"; I said, "No, I want the whole roof."
>
> Q. I don't frankly have any interest in what your agent told you. What I'm asking you is, did Travelers provide you with an explanation?
>
> A. According to this, they did.

Garcia Deposition TX at 111:25 to 112:11, attached hereto as **Exhibit 7**. Thus, the undisputed material facts support that Travelers did not violate the UCPA.

---

[1] Plaintiff's complaint that Travelers' engineer did not bring his own ladder is a red herring. Not only would this fact alone fail to establish a violation of the UCPA, but a ladder was on site and accessible on the date of Nelson's inspection. Exhibit 4 at TRAVELERS000156, Figure 1. Whether the engineer brought the ladder or not is of no consequence. A ladder was available and the engineer was able to inspect the roof and document his findings accordingly. *See* Exhibit 4.

Moreover, Travelers' alleged violations are unsupported by the law. "The Act does not 'require insurers to settle cases they reasonably believe to be without merit or overvalued.'" *Hauff v.* Patterson, 755 F. Supp. 2d 1138, 1148 (D. N.M. 2010) (quoting *Hovet v. Allstate Ins. Co.*, 2004-NMSC-010, ¶29, 135 N.M. 397, 406, 89 P.3d 69, 78. "Any insurer that objectively exercises good faith and fairly attempts to settle its cases on a reasonable basis and in a timely manner need not fear liability." *Id.* As the undisputed facts establish, based on its investigation, supported by engineering findings, Travelers did not believe that Plaintiff's roof warranted a full replacement or that the interior water damage was caused by the storm. After conducting its investigation, Travelers paid for the documented covered damages in a timely manner. The fact that Plaintiff takes issue with the scope of damages found and paid for, without more, is insufficient to support a finding that Travelers violated the UCPA.

Just as there is an absence of evidence to support Plaintiff's claim that Travelers engaged in any of the prohibited practices set forth in the act, there is similarly an absence of evidence that Travelers did so "knowingly" or with such frequency as to indicate a general business practice." Plaintiff has not come forward with even a scintilla of evidence to support that Travelers knowingly engaged (or frequently engages) in any of the prohibited practices set forth in the UCPA. Finally, Plaintiff has failed to produce any evidence of damages caused by Travelers alleged violations of the UCPA. For all of these reasons, Plaintiff's claim pursuant to the UCPA fails as a matter of law.

**C. New Mexico Does not Recognize a Claim for Negligent Failure to Pay**

Plaintiff's Complaint asserts a negligence claim against Travelers. Plaintiff complains that Travelers did not properly adjust or pay the claim. Dkt. 1-2 at ¶¶ 47-50. Plaintiff's claim fails as a matter of law as New Mexico does not recognize a claim for the negligent failure to pay a claim.

**"**Generally, a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based on a standard of reasonable care, and the breach being a cause in fact and proximate cause of plaintiff's damages." *See Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 6, 134 N.M. 43, 47-48, 73 P.3d 181, 185-86. "A finding of negligence, however, is dependent upon the existence of a duty on the part of the defendant." *Schear v. Bd. Cty. Comm'rs of Bernalillo Cty.*, 1984-NMSC-079, ¶ 4, 101 N.M. 671, 672, 687 P.2d 728, 729. Courts recognize that tort claims arise from a violation of a duty imposed by law; whereas contract claims arise from a failure of performance of a duty arising from or imposed by agreement. *Kreischer v. Armijo*, 1994-NMCA-118, ¶ 6, 118 N.M. 671, 673, 884 P.2d 827, 829. In the insurer-insured context, duties are based on the existence of the parties' contract. *Ambassador Ins. Co. v. St. Paul Fire and Marine "Ins. Co.*, 1984-NMSC-107, ¶10, 102 N.M. 28, 30 690 P.2d 1022, 1024. One of the duties between an insurer and insured is the obligation between the parties to act in good faith. 1984-NMSC-107, ¶11, 102 N.M. 28, 30 690 P.2d 1022, 1024. The Supreme Court of New Mexico stated:

> The implied covenant is an exception to the general rule that only those obligations contained in the written agreement will be imposed upon the parties. To impose a negligence standard on the insurer would violate this general rule and impose a duty that is not expressly provided for in the contract of insurance.

1984-NMSC-107, ¶11. In *Ambassador*, the New Mexico Supreme Court considered whether New Mexico law recognized a cause of action for the negligent failure to settle a claim and found it did

not. 1984-NMSC-107, ¶ 13, 102 N.M. 28, 30 690 P.2d 1022, 1024. Instead, it determined that the proper cause of action is one for bad faith.

Similarly, there is not a cause of action for negligent failure to pay a first party claim. *See Lackey v. Homesite Ins. Co.*, Civ No. 12-902-LH/RHS, 2013 WL 12136585 (D. N.M. July 15, 2013). In *Lackey*, the United States District Court for the District of New Mexico, after reviewing the holding in *Ambassador*, recognized that the factual distinctions between failure to pay cases and failure to settle cases may be without significant legal difference. *Id.* at *3. Specifically it stated:

> Indeed the New Mexico Uniform Jury Instructions for bad faith failure to pay and bad faith failure to settle impose virtually the same standard of conduct upon insurers, the former imposing a duty to act reasonably under the circumstances to conduct a timely and fair investigation/evaluation of the claim, and the later imposing a duty to "timely investigate and fairly evaluate the claim of the [t]he insured." Similarly, New Mexico courts have discussed the same duty upon insurers— to give equal consideration to its own interests and those of its insured in both failure to pay and failure to settle cases.

*Id.* Based, in part, on the above analysis, *the Lackey* court determined that a bad faith failure to pay claim is the only variety of a failure to pay claim available to insureds under New Mexico law. *Id.* at 4. As such, Plaintiff's negligence claim must be dismissed as a matter of law.

### D. Travelers Had a Reasonable Basis for Partially Denying Plaintiff's Hail Claim and Therefore his Bad Faith Claim Should be Dismissed as a Matter of Law.

As discussed in the previous section, New Mexico does recognize a claim for bad faith failure to pay a claim. Specifically, "[a]n insurance company acts in bad faith when it refuses to pay a claim of the policyholder for reasons which are frivolous or unfounded." UJI 13-1702 NMRA. Frivolous or unfounded means "an arbitrary or baseless refusal to pay, lacking any

support in the wording of the insurance policy or the circumstances surrounding the claim." *Sloan v. State Farm Mut. Auto Ins. Co.*, 2004-NMSC-004, ¶ 18, 135 N.M. 106, 113, 85 P.3d 230, 237. Frivolous and unfounded "does not mean 'erroneous or incorrect' . . . it means an utter or total lack of foundation for an assertion of non- liability." 2004-NMSC-004, ¶ 18, *quoting Jackson Nat'l Life Ins. CO., v. Receconi*, 1992-NMSC-019, ¶56, 113 N.M. 403, 419, 827 P.2d 118, 134. In contrast, where payment of policy proceeds depends on an issue of law or fact that is fairly debatable, the insurer is entitled to debate that issue. *United Nuclear Corp. v. Allendale Mutual Ins. Co.*, 1985-NMSC-090, ¶54, 103 N.M. 480, 492, 709 P.2d 649, 661 (insurers allowed to dispute coverage and the amount of damages). If an insurer has a reasonable basis to dispute or deny a claim, then summary judgment dismissing a claim for bad faith against it is appropriate. *Yumukoglu v. Provident Life & Acc. Ins. Co.*, 131 F. Supp. 2d 1215, 1226 (D. N.M. 2001).

The inquiry surrounding a bad faith claim is whether the denial of the claim was reasonable under the circumstances. *Am. Nat. Prop. & Cas. Co. v. Cleveland*, 2013-NMCA-013, ¶ 13, 293 P.3d 954, 959. At Travelers' request, the Property was inspected twice for hail damage. Statement of Material Undisputed Facts ¶¶ 6, 9. Neither inspection documented damage warranting the replacement of the built up roofing system. Statement of Material Undisputed Facts ¶¶ 7, 9. Further, neither investigation determined that the interior water damage to the Property was the result of a covered cause of loss. Statement of Material Undisputed Facts ¶¶ 7, 9. Also of importance, after the initial inspection, Travelers was informed and believed that Plaintiff's roofing contractor had inspected the Property and was in agreement with Aspen Claims regarding its findings and conclusions. Statement of Material Undisputed Facts ¶ 8. Based on the entirety of information available to it at the time it made its decision, Travelers had a reasonable basis for

denying Plaintiff's claim for complete replacement of the roof. There is simply no evidence to show that Travelers' position was arbitrary or baseless. Because Plaintiff cannot establish that Travelers acted with bad faith during the investigation and partial denial of the claim, Travelers requests that this Court grant summary judgment and dismiss Plaintiff's bad faith claim with prejudice.

## IV. CONCLUSION

For the reasons set forth above, Travelers respectfully requests this court grant this motion for summary judgment and dismiss Plaintiff's claims for breach of contract, violations of the unfair claims practices act, negligence, and bad faith, in their entirety and for any other relief that this Court deems proper.

Dated this 5th day of June, 2018

FOREAN GLENNON PALANDECH
PONZI & RUDLOFF PC

By: *s/ Jeri J. Wettestad*
Amy M. Samberg
Jeri J. Wettestad
1600 Broadway, Ste. 2425
Denver, CO 80202
Tel. (720) 336-2230
Fax (312) 863-5099
asamberg@fgppr.com
jwettestad@fgppr.com

P. Scott Eaton
P.O. Box 25305
Albuquerque, New Mexico 87125
Tel.: 505-243-1486
Fax: 505-842-0485

**Attorneys for Defendant Travelers**

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 5, 2018 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

MARTINEZ & MARTINEZ LAW FIRM, PLLC
Jonathan L.R. Baeza
730 E. Yandell Dr.
El Paso, Texas 79902
(915) 541-1000
(915) 541-1002 (Facsimile)
jonathan@martinezlawyers.com

and

MCCLENNY, MOSELEY & ASSOCIATES, PLLC
James M. McClenny
Derek L. Fadner
411 N. Sam Houston Parkway E., Ste. 200
Houston, Texas 77060
James@mma-pllc.com
derek@mma-pplc.com

***Attorneys for Plaintiff***

*s/ Letitia Conroy*
Letitia Conroy